**LAW OFFICE OF J. BLACKNELL**
**JOVAN BLACKNELL (SBN 237162)**
**KELLEN DAVIS (SBN 326672)**
**DEION BENJAMIN (SBN 332578)**
200 Corporate Pointe, Suite 495
Culver City, CA 90230
T.: 310.469.9117; F.: 310.388.3765

Attorneys for Plaintiff,
**JAVON LAMAR TOBERT**

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVON LAMAR TOBERT, | **COMPLAINT**  '23CV1321 RBM DDL |
| **Plaintiff**, | (1) Violation of Civil Rights (42 U.S.C. §1983) (*5th, 8th and 14th Amendments – Excessive Force*) |
| vs. | (2) Violation of Civil Rights (42 U.S.C. §1983) (*4th, 8th, and 14th Amendment – Cruel and Unusual Punishment*) |
| COUNTY OF SAN DIEGO; DOES 1 through 10, inclusive, | (3) Violation of Civil Rights (42 U.S.C. § 1983)(4th, 8th, and 14th – Municipality Liability – Unconstitutional Custom, Practice, or Policy) |
| **Defendants**. | (4) Violation of Civil Rights (42 U.S.C. § 1983)( *4th, 8th, and 14th Amendment – Deliberate Indifference to Serious Medical Needs*) |
| | (5) Violation of Civil Rights *(*42 U.S.C. §1983)( *4th, 8th, and 14th Amendment – Municipality Liability - Inadequate Training/Policy of Inaction*) |
| | (6) Battery |
| | (7) Assault |
| | (8) Intentional Infliction of Emotional Distress |

1

(9)  Violation of Title II of Americans with Disabilities Act/Rehabilitation Act of 1973 §504

(10)  Interference with Constitutional Rights *(BANE Act: California Civil Code §52.1)*

**DEMAND FOR JURY TRIAL**

**Case no.:**

_____

Plaintiff JAVON LAMAR TOBERT alleges on information and belief as follows:

**PARTIES**

1.  At all relevant times mentioned in this Complaint, Plaintiff JAVON LAMAR TOBERT (hereinafter "Mr. Tobert" or "Plaintiff") was a resident of San Diego County, California.

2.  At all times relevant herein, Plaintiff was an incarcerated inmate in the custody of DEFENDANT SAN DIEGO COUNTY at the GEORGE F. BAILEY DETENTION FACILITY (hereafter "GEORGE F. BAILEY FACILITY") in San Diego, California.

3.  DEFENDANT SAN DIEGO COUNTY (hereinafter, "COUNTY") was at all times relevant herein, and is, a public entity duly organized and existing under and by virtue of the laws of the state of California.

4.  COUNTY is responsible for the care and custody of inmates incarcerated in COUNTY jail facilities.

5.  DEFENDANT COUNTY is responsible for the funding, staffing, and direction of San Diego County Sheriff's Department (hereinafter also "SDSD"); for the hiring, retention, training, and supervision of SDSD employees; and for the observation of rights of SDSD employees and persons subject to SDSD jurisdiction.

6.  Hereinafter, all individual Defendants, including these presently named as DOE defendants, shall be collectively referred to as "DEFENDANTS."

7.  PLAINTIFF is ignorant of the true names and capacities of those DEFENDANTS sued herein as DOES 1 through 10, inclusive, and therefore sues them by such fictitious names. PLAINTIFFS will amend this complaint to show the true names and capabilities of said DOE DEFENDANTS when the same are ascertained. PLAINTIFF is informed and believes and thereon alleges, that each of the fictitiously named defendants was in some manner liable and legally responsible, in that their conduct caused the damages and injuries set forth herein.

8.  PLAINTIFF is informed and believes and based upon such information and belief, alleges that each of the above-named parties was an agent, employee, principal, or employer of each of the remaining defendants and vice/versa. In addition, PLAINTIFF is informed and believes and, on such basis, alleges that the defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named defendants conspired with, and/or aided and/or abetted each of the remaining defendants in committing the acts herein alleged.

3

**JURISDICTION**

9.   PLAINTIFF JAVON LAMAR TOBERT brings the instant action pursuant to 42 U.S.C. §1983 to redress conduct by DEFENDANTS, who, at all times relevant herein, acted under color of law, and through said conduct deprived PLAINTIFF of his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as under federal and state law.

10.   This court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §1343(a)(3) and (a)(4) because PLAINTIFF's claims present questions arising under the laws, treatises, and Constitution of the United States, such that these questions can only be decided by a competent federal court.

11.   Because PLAINTIFF was subject to DEFENDANTS' complete dominion and control, and DEFENDANTS' intimidated, threatened, secluded, misrepresented facts to, and otherwise prevented PLAINTIFF from seeking administrative remedies for the harms alleged herein, no administrative remedies were available to PLAINTIFF with the meaning of the Prison Litigation Reform Act ("PLRA") throughout the time that he was in DEFENDANTS custody. *42 U.S.C.A §1997e; Ross v. Blake, 136 S. Ct 1850 (2016).*

12.   This court has supplemental jurisdiction pursuant to 28 U.S.C section 1367 over those claims that do not arise under the laws, treaties, and Constitution of the United States because those claims arise from the same occurrence that gave rise to the governing federal questions.

13.   This court has personal jurisdiction over all DEFENDANTS because COUNTY is a public entity existing and operating solely in the Southern District of California, and the remaining DEFENDANTS are agents or employees of COUNTY.

4

14. This court has personal jurisdiction over DEFENDANTS, and each of them, because, on information and belief, SDSD DEFENDANTS are each domiciled in the Southern District of California.

15. PLAINTIFF has exhausted all administrative remedies available to him as a inmate in the custody of SDSD pursuant to *42 U.S.C.A. §1997e.*

*16.* On October 10, 2022, PLAINTIFFS filed a notice of government claim with the County of Los Angeles pursuant to the California Tort Claims Act. *Cal. Gov. Code section 910-945.6.*

*17.* On December 27, 2022, PLAINTIFFS government claim was rejected by operation of law as a result of DEFENDANT COUNTY's failure to respond to the claim within 45 days of its receipt.

## **<u>VENUE</u>**

18. Venue is proper as to COUNTY because the court is located within San Diego County, COUNTY'S jurisdiction aligns with that of the court, and all of COUNTY'S activities take place in San Diego County.

19. Venue is proper as to all individual DEFENDANTS because, on information and belief, all individual DEFENDANTS reside in San Diego County. The individual DEFENDNANTS were the knowing agents or representatives of COUNTY; the events at issue occurred in San Diego County; and PLAINTIFF is a resident of San Diego County.

20. PLAINTIFF alleges on information and belief that DOES 1 through 10, inclusive, are also residents of the Southern District of California and that the court has jurisdiction over those defendants, rendering venue proper as to those parties as well.

21. The Southern District of California is also the proper venue for this action pursuant to 28 U.S.C. §1391 because all acts giving rise to this action occurred in the Southern District of California.

## **COMMON ALLEGATIONS**

22. PLAINTIFF was housed in the custody of DEFENDANT COUNTY on or about June 23, 2022.

23. PLAINTIFF is a 42-year-old male who suffers from vision impairment due to only having one eye; epilepsy seizures; chronic asthma; and chronic migraines. PLAINTIFF also has been diagnosed and suffers from borderline personality disorder and severe dissociation.

24. Because of PLAINTIFFS medical diagnosis/conditions he was classified by SDSD as a very vulnerable inmate/patient. DEFENDANT has actual knowledge of PLAINTIFFS medical conditions.

25. PLAINTIFF was housed in dormitory 2-A module, quad 104 at the George F. Bailey Facility.

26. On April 20, 2022, PLAINTIFF remained in the custody of DEFENDANT COUNTY at SAN DIEGO COUNTY GEORGE F. BAILEY DETENTION FACILITY, (hereinafter, as "GEORGE F. BAILEY DETENTION FACILTY") in San Diego, California.

27. George F. Bailey Facility dormitories are equipped with bunk beds. Individuals who suffer from seizures are not allowed to sleep on the top bunk and must sleep on the bottom bunk.

28. Agents, employees, and/or representatives of DEFENDANT COUNTY exercise exclusive dominion and control over San Diego County jail facilities, including George F. Bailey Facility.

29. Agents, employees, and/or representatives of DEFENDANT COUNTY, exclusively, control access to each area, part, module, section, cell, room, office, pod, and/or tier in GEORGE F. BAILEY FACILITY.

30. On or about April 20, 2022, between the hours of approximately 10:30 p.m.; PLAINTIFF was located and housed in Dorm 2-A module, quad 104 which was assigned to him by COUNTY representatives.

31. PLAINTIFF and a few other inmates were playing cards when DOE DEFENDANT entered the dorm with two new inmates. DOE DEFENDANT violently yelled at the inmates ordering them to find the two new inmates bottom bunks beds because the new inmates suffered from seizures.

32. DOE DEFENDANT stated that if the inmates could not find the new inmates bottom bunks, he would forcefully begin to move people around.

33. Based on information and belief, the dorm only had one available bottom bed. PLAINTIFF directed one of the two new inmates to the only available bottom bunk.

34. Due to the fact that there was only one available bottom bunk bed, the inmates in the dorm told the remaining inmate to go to the quad downstairs to check if there was any available bottom bunks.

35. Due to the fact that the bottom quad did not have any available beds, the bottom quad's inmates sent the new inmate back upstairs and suggested that he be a "floor sleeper"

36. When PLAINTIFF heard this he suggested that the bottom quad accept the new inmate as a "floor sleeper."

37. While having this conversation DOE DEFENDANT entered the dorm and immediately approached PLAINTIFF and stated "since you're saying something you can sleep on the floor."

38. In response, PLAINTIFF stated "I can't sleep on the floor because I suffer from seizures."

39. Enraged at PLAINTIFFS response DOE DEFENDANT stated, "Fuck you, I'll kick your ass." PLAINTIFF responded, "I'm not worried about that."

40. Without warning DOE DEFENDANT violently punched PLAINTIFF in the face with a closed fist at least three times until PLAINTIFF fell to the ground.

41. While PLAINTIFF laid defenseless on the ground, DOE DEFENDANTS, pinned PLAINTIFF to the ground and placed him in handcuffs. After handcuffing PLAINTIFF, DOE DEFEDANT violently began to punch PLAINTIFF in the face and head area.

42. DOE DEFENDANT continued the physical assault of PLAINTIFF until Deputies entered the dorm and removed DOE DEFENDANT from PLAINTIFF.

43. Based on information and belief the physical assault was observed by at least 40 inmates who resided in dorm 2-A module, quad 104.

44. PLAINTIFF was transported to medical to be treated for his injuries.

45. Based on information and belief after PLAINTIFF was taken to medical, fellow inmates who witness physical assault sat on the floor and refused to "lock up" until Deptuty Vo entered the dorm and took pictures of the blood left behind due to the PLAINTIFFS injuries.

46. As a result of the attack PLAINTIFF suffered huge knots on his head, excruciating head pain, fractured nose, fractured left hand, fractured right foot, fractured left hip, loss of hearing in right ear, and excruciating sharp pain that comes and goes throughout the top side of his skull.

47. The jail medical staff ordered PLAINTIFF ice and Tylenol to deal with the pain and injuries. Medical staff only ordered x-rays for PLAINTIFF injuries to his hand, hip, and foot. However, medical staff stated that PLAINTIFF suffered no fractured.

48. Six days after the physical assault, PLAINTIFF was transferred to California Department of Corrections (CDCR). Due to the excruciating pain PLAINTIFF requested x-rays. CDCR doctors stated that PLAINTIFF suffered a fractured left hand, fractured right foot, fractured nose, and fractured side of skull.

49. On information and belief, DEFENDANTS failed to file any paperwork to justify their excessive use of force in efforts to shield culpable individuals from liability.

50. Cameras are stationed in George F. Bailey Detention Faclity Dorm 2-A Quad 104 that provide live feed as well as a saved footage of the physical assault. There is no dispute whatsoever that DOE DEFENDANT knew the attack occurred.

51. On information and belief, PLAINTIFF is informed and believes that this assault is a result of direct retaliation for not giving up his bottom bunk to the new inmate.

### FIRST CLAIM – VIOLATION OF 42 U.S.C. § 1983 et. seq.: FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT (EXCESSIVE FORCE)

**By Plaintiff JAVON LAMAR TOBERT**

**Against COUNTY OF SAN DIEGO, and DOES 1-10**

52. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 51, above.

53. At all times relevant herein, PLAINTIFF had, and has, a right secured by the FIFTH, EIGHTH Amendments to the United States Constitution, made applicable to the states through the Fourth Amendment, to freedom from official misconduct and excessive and

gratuitous force applied with a purpose to harm and punish that is unrelated to any legitimate law enforcement or penological objectives.

54. By intentionally and maliciously physically punching PLAINTIFF in his face until he fell to the ground and containing to viciously physically punch PLAINTIFF in the head and face while he was handcuffed was harmful, unwanted, excessive, and was employed with the intent of causing pain to PLAINTIFF for a purpose unrelated to any legitimate penological objective.

55. DEFENDANTS acted under the color of law and abused his authority as a deputy not only to physically assault PLAINTIFF until he fell to the ground for no legitimate purpose, but to pin PLAINTIFF on the ground, place in in handcuffs and viciously continue to physically punch PLAINTIFF in head and face until deputies entered the dorm to stop the assault. PLAINTIFF is informed and believes that his brazen conduct was part of an unlawful custom with SDSD that occasioned and facilitated the conditions where DOE DEFENDANT believed could take such unlawful action against PLAINTIFF without reprocussions

56. DOE DEFENDANTS did not act to restore security or any other legitimate penelogical objective when he physically assaulted PLAINTIFF to the point of fracturing his nose, left hand, right hip, caused him to suffer lost of hearing in right ear, and dents at the top side of skull because PLAINTIFF was not resisting any order, lawful or otherwise, and the force against PLAINTIFF did not serve to prevent or stop any conduct that could be deemed a violation of the law or jail protocol.

57. The conduct of the DEFENDANTS was so brazen, and all other officers that were notified of DEFENDANTS actions resulting in PLAINTIFF's injuries were so familiar and

comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of DEFENDANT LASD, under which LASD representatives apply unlawful violence and excessive force against inmates for reasons unrelated to any legitimate penological objective, and other representatives with knowledge of the unlawful conduct adhere to silence and refuse to intervene or report the unlawful activity.

58. Officers, support staff, supervisors, and legislating authorities within SDSD know of specific instances of this conduct undertaken as part of said custom and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetuation and consequences of this custom. PLAINTIFF further alleges on information and belief that the entire chain of command in SDSD, up to and including the SDSD Secretary, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

59. As a result of the aforementioned conduct DEFENDANTS, PLAINTIFF has sustained damages in an amount subject to proof at trial.

60. PLAINTIFF is informed and believes that DEFENDANTS acted knowingly and willfully, with malice and oppression and with the intent to harm PLAINTIFF. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring then and others from such conduct in the future.

61. DEFENDANTS representatives acted with impunity and without fear of punishment or reprimand from supervisors or any other authority. In addition, Peter J. Pitchess Detention is

11

equipped with hundreds of cameras that necessarily recorded the incident. DEFENDANTS' actions despite the certainty that their conduct would be documented on camera reflects the actors' knowledge of the custom or policy and their belief that superiors or other officials would allow, affirm, or not punish them for such conduct.

62. Plaintiff further alleges on information and belief that the entire chain of command in the Sheriff's Department, up to and including the George F. Bailey Facility and the County of San Diego Board of Supervisors, are aware of this practice or custom and knowingly approve of, facilitate of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

63. As a direct and proximate result of DEFENDANTS' actions pursuant to its established practice, policy, or custom, PLAINTIFF was subjected to extreme violence, and sustained severe physical, mental, and emotional damages.

64. As a result of the aforementioned conduct of DEFENDANTS, PLAINTIFF has sustained damages in an amount subject to proof at trial.

**SECOND CLAIM – VIOLATION OF 42 U.S.C. § 1983 et. seq.: FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT (CRUEL AND UNUSUAL PUNISHMENT)**

**By Plaintiff JAVON LAMAR TOBERT**

**Against COUNTY OF SAN DIEGO, and DOES 1-10**

65. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 64, above.

66. At all times relevant herein, PLAINTIFF had, and has, a right, secured by the Fifth, Eighth Amendments to the United States Constitution, made applicable to the states through the Fourteenth Amendment, to be free from cruel and unusual punishment involving the wanton

infliction of pain that is unrelated to any legitimate penological objective and administered without due process of law.

67.   At all times relevant herein, PLAINTIFF had, and has, a right, secured by the Fifth, Eighth Amendments to the United States Constitution, made applicable to the states through the Fourteenth Amendment, to be free from cruel and unusual punishment involving the wanton inflicion of pain that is unrelated to any legitimate penological objective and administered without due process of law.

68.  DEFENDANTS' actions against PLAINTIFF amounted to punishment without due process of law because DEFENDANTS' words and conduct demonstrated that main purpose of fracturing PLAINTIFFS', left hand, right foot, and hip was to punish PLAINTIFF although PLAINTIFF had not committed any act that could constitute a violation of LASD rules or pose a threat to the safety or security of any inmate, officer, or the prison itself.

69.  Even if PLAINTIFF had violated some rule such that punishment against him was warranted, which he did not, DEFENDANTS subjected PLAINTIFF to cruel and unusual punishment by intentionally, wantonly, and cruelly punching him until he fell to the ground, handcuffing him and repeadly punching him until he suffered a fractured nose, left hand, right foot, and left hip.

70.  DOE DEFENDANTS actions in maliciously punching PLAINTIFF in the face until he fell and continuing to beat PLAINTIFF in the face and head while handcuffed resulting in a fractured nose, left hand, right foot, and fractured side of skull, as described herein, were not, and cannot be, related to any legitimate penological objective.

71.  The conduct of DEFENDANTS was so brazen, and all other officers that were notified of DEFENDANTS' actions resulting in PLAINTIFF's injuries were so familiar and

13

comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of DEFENDANT SDSD, under which SDSD representatives subject inmates to cruel and unusual punishment for reasons unrelated to any legitimate penological objective, and other representatives with knowledge of the unlawful conduct adhere to silence and refuse to intervene or report the unlawful activity.

72. Officers, support staff, supervisors, and legislating authorities within SDSD know of specific instances of this conduct undertaken as part of said custom and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetration and consequences of this custom. PLAINTIFF further alleges on information and belief that the entire chain of command in SDSD, up to and including the SDSD Secretary, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

73. As a direct and proximate result of DEFENDANTS' actions pursuant to its established practice, policy, or custom, PLAINTIFF was subjected to punishment so cruel, wanton, and malicious that shocks the conscience

74. As a result of the aforementioned conduct of DEFENDANTS, PLAINTIFF has sustained damages in an amount subject to proof at trial.

75. PLAINTIFF is informed and believes that DEFENDANTS acted knowingly and willfully, with malice and oppression and with the intent to harm PLAINTIFF. Therefore, PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

## THIRD CLAIM – VIOLATION OF 42 U.S.C § 1983 et. Seq.: MUNCIPAL

## LIABILITY (UNCONSTITUTIONAL CUSTOM, PRACTICE, OR POLICY)

### By Plaintiff JAVON LAMAR TOBERT

### Against SDSD

76.   PLAINTIFF reincorporates, and realleges as if set forth fully herein, paragraphs 1 through 75, above.

77.   The individual DOE DEFENDANTS acted under color of law and within the course and scope of their employment by the SDSD.

78.   The DOE DEFENDANTS deprived PLAINTIFF of his rights under the Fourth, Eighth, and Fourteenth Amendments, as alleged above.

79.   Based on information and belief, PLAINTIFF thereon alleges that, at all times herein mentioned, DEFENDANT SDSD, the relevant policy maker, and unnamed certain DOES DEFENDANTS (hereinafter referred to collectively as the entity defendants) maintain or tolerate unconstitutional customs, practices, and policies that facilitated the deprivation of PLAINTIFF Fourth, Eighth, and Fourteenth Amendment, as alleged above.

80.   The policies, customs, and practices described above are also evidenced by the victimization of other inmates on multiple occasions at George F. Bailey Facility by DEFENDANTS non-compliance with Adult Title 15 standards, including the failure of SDSD to investigate multiple grievances filed by other inmates in regard to multiple incidents of physical assaults orchestrated or committed by SDSD staff.

81.   Entity DEFENDANTS had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Indeed, entity DEFENDANTS knew of their obligations under Adult Title 15 and still failed to investigate the multiple incidents

of physical assault reported by other inmates. Said officials acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices, and customs with respect to the constitutional rights of PLAINTIFF.

82. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned DEFENDANTS, PLAINTIFF was injured, and sustained damages as alleged above. Accordingly, PLAINTIFF seeks compensatory damages from all entity DEFENDANTS.

## FOURTH CLAIM – VIOLATION OF 42 U.S.C § 1983 et. Seq.: FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT (DELIBERATE INDIFFERENCE)

### By Plaintiff RODNEY HILL

### Against SDSD, and DOES 1 through 10

83. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 82, above.

84. By physically assaulting PLAINTIFF, despite having knowledge that PLAINTIFF has one eye and suffers from epilepsy, DEFENDANTS displayed a clear, unequivocal and deliberate indifference to PLAINTIFFS serious medical needs and condition. When DEFENDANTS began to physically assault PLAINTIFF, DEFENDANTS had actual knowledge that PLAINTIFF had one eye and suffered from epilepsy, as evidence of PLAINTIFF visibly missing an eye and telling DEFENDANT "he cannot sleep on the floor because he has seizures."

85. As a SDSD agent employed as a deputy officer, DEFENDANTS knew or should have known that they were creating a substantial risk of serious harm to PLAINTIFF by being deliberately indifferent to PLAINTIFF missing an eye and suffering epilepsy.

DEFENDANT knew, or should have known, that he was creating a substantial risk of, at minimum, seriously exacerbating PLAINTIFFS already severe injuries are cause by the application of excessive and gratuitous force by SDSD DEFENDANTS. Officers, support staff, supervisors, and legislating authorities within SDSD know of specific instances of this conduct undertaken as part of said custom and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetration and consequences of this custom. PLAINTIFF further alleges information and belief that the entire chain of command in SDSD, up to and including the SDSD Secretary, are aware of this practice or custom and knowingly approve of, facilitate, participate in, and/or fail to prevent the perpetuation of said custom or practice.

86. DEFENDANTS LASD AND DOES 1 through 10, which included SDSD custodial and medical staff, were on notice that SDSD's deficient policies procedures and unlawful practices as alleged herein created a substantial risk of serious harm, including broken bones and other severe physical and mental injuries, to PLAINTIFF and other similarly situated inmates because they are subject to the complete dominion and control of SDSD and thus at risk of harm when SDSD and its agents uphold a custom in which they use excessive force and subject inmates to cruel and unusual punishment and then deliberately disregard the medical condition or needs created by this custom even when SDSD agents including supervisors gain actual knowledge of said need for medical attention.

87. As a result of the aforementioned conduct of DEFENDANTS, PLAINTIFF has sustained damages in an amount subject to proof at trial

88. PLAINTIFF is informed and believes that DEFENDANTS acted knowingly and willfully, with malice and oppressing and with the intent to harm PLAINTIFF. Therefore,

PLAINTIFF is entitled to an award of punitive damages against the individual defendants, and not any public entity, for the purpose of punishing deterring them and others from such conduct in the future.

### SIXTH CLAIM – VIOLATION OF 42 U.S.C § 1983 et. seq.: MUNICIPAL LIABILTY (INADEQUATE TRAINING/POLICY OF INACTION)

**By Plaintiff JAVON LAMAR TOBERT**

**Against SDSD**

89. PLAINTIFF reincorporates, and realleges as if set forth fully herein, paragraphs 1 through 88, above.

90. At all times mentioned herein and prior thereto, DEFENDANTS SDSD, and certain DOES (herein referred to collectively as the entity DEFENDANTS) had a duty to train, instruct, supervise, discipline and/or correct their subordinates to assure they respected and did not violate constitutional and statutory rights including, but not limited to, the right to be free from physical abuse, the right to be safe and protected from injury while in defendant's custody under the Fourth, Eight, and Fourteenth Amendments to the U.S. Constitution.

91. Based on information and belief, PLAINTIFF thereupon alleges, that the prior incident alleged herein, DEFENDANTS and certain DOES facilitated, permitted, ratified and/or condoned acts of physical assault of PLAINTIFF by DEFENDANTS, and were deliberately indifferent to the health and safety of inmates in general and PLAINTIFF in particular. Said DEFENDANTS knew, or should have reasonably known, of this practice, pattern, or custom of constitutional violations by the DEFENDANTS they supervised, and additionally of the existence of certain facts and situations that created the potential of unconstitutional acts,

and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to PLAINTIFF, but failed to do so.

92. The training provided by the SDSD, relevant policy makers, relevant SDSD officials, and certain DOES was not adequate to train their correctional officers, nurses, and other jail staff to handle the usual and recurring situations with which they must deal. As evidenced by the numerous incidents of physical assaults reported by inmates in SDSD custody by DEFENDANT staff, the entity DEFENDANTS did not adequately train their officers and staff to prevent, deter, detect, and avoid physical assault of PLAINTIFF at the GEORGE TOBERT – and were on notice of such.

93. The entity DEFENDANTS maintained a policy and practice of inaction with respect to the violation of policies designed to prevent or deter physical assaults of PLAINTIFF. SDSD deputy officers and staff who engaged in suspicious behavior, or behavior that violated written policy, were inadequately disciplined, or otherwise not penalized in connection with physical or otherwise inappropriate behavior towards PLAINTIFF. The entity DEFENDANTS were deliberately indifferent to the obvious consequences of their failure to train their officers and staff adequately. Entity DEFENDANTS' non-compliance with Adult Title 15 standards is further evidence of entity defendants' systematic failure to comply with their constitutional obligations.

94. As a result, thereof, PLAINTIFF'S right under the Fourth, Eight, and Fourteenth Amendments to the U.S Constitution were violated. As a further result thereof, PLAINTIFF sustained the injuries and damages alleged herein.

95. The individual DEFENDANT DEPUTIES and DOE DEFENDANTS acted under color of law and within the course and scope of their employment by the LASD.

96. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and practice of inaction of the aforementioned defendants, PLAINTIFF was injured, and sustained damages as alleged above. Accordingly, PLAINTIFF seeks compensatory damages from all entity DEFENDANTS.

97. The conduct of the individual defendants mentioned herein, in their individual capacities, was intentional, malicious, willful, wanton and in reckless disregard of PLAINTIFF'S conditional rights, and/or grossly negligent as this conduct shocks the conscience and is fundamentally offensive to a civilized society.

98. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned DEFENDANTS, PLAINTIFF was injured, and sustained damages as alleged above. Accordingly, PLAINTIFF seeks compensatory damages from all entity DEFENDANTS.

## NINTH CLAIM FOR RELIEF – BATTERY

### By Plaintiff JAVON LAMAR TOBERT

### Against SDSD DEFEDANTS

99. PLAINTIFF reincorporates, and realleged as if set forth fully herein, paragraphs 1 through 98, above.

100. By viciously punching PLAINTIFF in the face until he fell to the ground, pinning PLAINTIFF to the ground, handcuffing PLAINTIFF, and maliciously and intentionally punching defenseless PLAINTIFF in the face and head while handcuffed on the ground, DEFENDANTS acted in manner that was substantially certain to, and did, result in harmful and offensive touching against PLAINTIFF.

101. The intentional conduct of DEFEDANTS caused PLAINTIFF to suffer physical, mental, and emotional harm subject to proof.

## TENTH CLAIM FOR RELIEF – ASSUALT

### By Plaintiff JAVON LAMAR TOBERT

### Against SDSD DEFENDANTS

102. Plaintiff hereby repeats, re-alleges, and incorporates by references herein each and every allegation contained in paragraphs 1 through 116.

103. DEFENDANT, intentionally and maliciously repeatedly punched PLAINTIFF in the face until he fell to the ground, put PLAINTIFF in imminent apprehension of such contact or was intended to put PLAINTIFF in imminent apprehension of such conduct.

104. DEFENDANT, intentionally and maliciously repeatedly punching PLAINTIFF in the face until he fell to the ground, PLAINTIFF was put in imminent apprehension of harmful or offensive contact by DEFENDANT and actually believed DEFENDANT had the ability to make harmful or offensive contact with PLAINTIFFS person.

105. PLAINTIFF did not consent to DEFENDANTS intended harmful or offensive contact with PLAINTIFFS person or intent to put PLAINTIFF in imminent apprehension of such contact.

106. As a direct result of the above described conduct, PLAINTIFF has suffered and continues to suffer great pain of mind and body shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life, was prevented and will continue to be prevented from obtaining the full enjoyment of life; and will incur medical expenses for physical injuries and additionally, for psychological treatment, therapy, and counseling.

## TENTH CLAIM FOR RELIEF – INTENTIONAL INFLICTION OF EMOTIONAL

## DISTRESS

### By Plaintiff JAVON LAMAR TOBERT

### Against SDSD DEFENDANTS

107. PLAINTIFF realleges, and incorporates herein as if set forth in full, paragraphs 1 through 106, above.

108. During the times relevant herein, DOE DEFENDANTS, and each of them, engaged in extreme, outrageous, unlawful, and unprivileged conduct, including, but not limited to:

    a. DOE DEFENDANT telling PLAINTIFF "Fuck you I'll kick your ass."

    b. DEFENDANT repeatedly punching PLAINTIFF in the face until he fell to the ground.

    c. Pinning PLAINTIFF to the ground and placing him in handcuffs.

    d. Continuing to physically punch PLAINTIFF in the face and head while handcuffed and defenseless on the ground.

109. DEFENDANTS and DOES 1 through 10 engaged in all conduct described in this complaint with express and implied knowledge that PLAINTIFF was particularly susceptible to emotional distress because he was incarcerated and subject to complete control of DEFENDANTS.

110. DEFEDNANTS and DOES 1 through 10, inclusive, participated in, conspired with approved of and or aided and abetted the conduct of remaining DEFENDANTS.

111. On information and belief, DEFENDANTS, and each of them, intended to cause harm to PLAINTIFF, or acted with a reckless disregard for the likelihood that we would suffer extreme emotional distress as a result of the conduct listed above.

112. As the direct and proximate result of the extreme and outrageous conduct of DEFENDNANTS, and DOES 1 through 10, inclusive, PLAINTIFF suffered extreme emotional and physical distress, including, but not limited to humiliation, depress, anxiety, mortification, terror, shock, worry and indignity to an extent and in and amount subject to proof at trial.

## NINETH CLAIM – VIOLATION OF TITLE II OF AMERICANS WITH DISABILITIES ACT/REHABILITATION ACT OF 1973 §

### By Plaintiff JAVON LAMAR TOBERT

### Against DOES 1 through 10

113. PLAINTIFF hereby repeats, re-alleges, and incorporates by reference herein each and every allegation contained in paragraphs 1-112 above, as if fully set forth herein.

114. The conduct of DEFENDANTS, as alleged herein, violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.,* and the federal regulations promulgated pursuant thereto.

115. At all times relevant to this action, the ADA, 42 U.S.C. § 12101 *et seq.,* was in full force and effect in the United States.

116. Javon Lamar Tobert was a qualified individual with a disability, as that term is defined in Section 504 of the Rehabilitation Act, 29 U.S.C. § 705 (20), and the ADA.

117. The ADA, 42 U.S.C. § 12132, Prohibits public entities from discriminating against a qualified individual with a disability in the provision of services, programs, or activities. Section 504 of the Rehabilitation Act, 29 U.S.C § 794 prohibits any program or activity from receiving federal financial assistance from denying a qualified individual with a

disability the benefits of the program or activity or discriminating against the qualified individual with a disability because of the disability.

118. DEFENDANT COUNTY OF SAN DIEGO receives financial assistance as that term is used in 29 U.S.C. § 794.

119. PLAINTIFF was discriminated against in the provision of appropriate institutional placement and medical and/or mental health services because of his paraplegic medical condition, in that he was delayed and not immediately provided appropriate medical services after he was physically assaulted and helpless

120. The aforementioned acts and/or omissions by DEFENDANTS, and DOES 1 through 10, as alleged herein, were malicious, reckless and/or accomplished with a wanton or conscious disregard of PLAINTIFF's rights.

**TWELETH CLAIM – VIOLATION CIVIL CODE SECTION 52.1 (B)**

**INTERFERENCE WITH CONSTITUTION RIGHTS**

**By Plaintiff JAVON LAMAR TOBERT**

**Against DOES 1 through 10**

121. PLAINTIFF hereby repeats, re-alleges, and incorporates the allegations continued in paragraphs 1-120, above, as if fully set forth herein.

122. The Plaintiff has, and at all times referenced in this Complaint has had, a right, secured by the Constitution and laws of the United States and the Constitution and laws of the State of California, against the application of cruel and unusual punishment.

123. Plaintiff has also had a right to be safe and secure in the unmolested integrity of his body.

124. DEFENDANTS have, by way of physical force, threats, intimidation, or coercion as set forth herein interfered with or attempted to interfere with Plaintiff's aforementioned constitutional rights through the conduct described herein.

125. DEFENDANTS have engaged in a pattern of conduct that is reflective of a policy or procedure amongst DEFENDANTS to engage in conduct such as that described herein, and to evade detection and reprimand for such conduct, and to promulgate a culture in Los Angeles County jails where inmates' constitutional rights are violated with deliberate indifference and impunity.

126. As a result of the above-described, Plaintiff has suffered, and continues to suffer, great pain or mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from obtaining the full enjoyment of life: and will incur medical expenses for physical injuries and, additionally, for psychological treatment, therapy, and counseling.

127. As a direct and proximate result of the aforementioned acts of defendants, PLAINTIFF was injured as set forth above, and is entitled to statutory damages under California Civil Code §52, as well as compensatory and punitive damages according to proof.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of action as follows:

1. Plaintiff demands a jury trial as to the issues triable;

2. General damages and special damages according to proof;

3. Punitive damages against the individual defendants, and not any public entity;

25

4.  Attorney's fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

5.  Injunctive relief, both preliminary and permanent, as allowed by law;

6.  Costs of suit incurred herein; and

7.  Such further relief as the Court deems just and proper.


Dated: June 26, 2023,                          Respectfully submitted,

                                               LAW OFFICE OF J. BLACKNELL


                                               By:
                                               KELLEN DAVIS
                                               DEION BENJAMIN
                                               Attorney for Plaintiff
                                               JAVON LAMAR TOBERT